UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
------------------------------------------------------

| | |
|---|---|
| United States of America, : | |
| : | Case No. 1:20-cr-301 |
| Plaintiff, : | |
| : | |
| vs. : | OPINION & ORDER |
| : | [Resolving Doc. 16] |
| Derrick Terrell, : | |
| : | |
| Defendant. : | |

------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

With this order, the Court addresses Defendant Derrick Terrell's motion to suppress the Phencyclidine ("PCP") recovered during a warrantless search of the vehicle he habitually drove. For the reasons presented below, the Court **DENIES** Defendant's motion to suppress.

I. Background

Defendant pled guilty in 2008 to possessing PCP with intent to distribute, distributing PCP, and possessing a firearm as a convicted felon.[1] He was sentenced to 151 months' imprisonment and three years of supervised release.[2]

After serving his prison term, Defendant began federal supervised release on April 13, 2018,[3] under the supervision of United States Probation Officer Megan Teaney.[4] While on supervised release, Defendant is subject to a release condition requiring him to submit his person, residence, and vehicle, among other things, to a warrantless search.[5]

On January 15, 2020, Probation Officer Teaney learned of a domestic disturbance at Defendant's residence from the Garfield Heights Police. The disturbance occurred January

---

[1] Case No. 1:07-cr-00323, Doc. 376.
[2] *Id.*
[3] Case No. 1:20-mj-02115, Doc. 10 at 23.
[4] Case No. 1:07-cr-00323, Doc. 376.
[5] *Id.*

Case No. 1:20-cr-301
Gwin, J.

14, 2020, the night before Probation Officer Teaney received notice.[6] Defendant's wife, Sonjamara Terrell, had called the police, citing Defendant's erratic behavior, including speaking nonsense and crawling under a blanket naked with his 13-year-old stepdaughter.[7]

Mrs. Terrell told police that she believed Defendant's behavior resulted from PCP consumption.[8] After Sonjamara Terrell asked Defendant to leave, Defendant left in a Silver Mazda CX-7 to the Cleveland Clinic, where he claimed he was poisoned with PCP.[9]

After learning of these events, Probation Officer Teaney decided to conduct a welfare check on Defendant.[10] Because she could not personally perform the check, she contacted Kristine Lorentz, a fellow United States Probation Officer, to visit Defendant.[11]

Officer Lorentz agreed to conduct the probation supervision check and asked the Cleveland Heights Police to assist her.[12] Upon arriving at Defendant's residence, Lorentz and accompanying officers knocked on the door.[13] Initially Defendant did not respond, coming to the door only after officers knocked and attempted for 15 minutes to contact him.[14]

Defendant at first refused to allow Lorentz to enter his residence.[15] But after Lorentz reminded Defendant of his supervised release search condition, Defendant Terrell let Lorentz in,[16] informing her that his wife was sick and asleep on the living room couch.[17]

---

[6] Supp. Hr'ng Tr. Vol. I, p.7.
[7] Supp. Hr'ng Tr. Vol. II, p.7.
[8] Supp. Hr'ng Tr. Vol. II, pp.7–8.
[9] Supp. Hr'ng Tr. Vol. I, pp.7, 11.
[10] *Id.* at 6.
[11] *Id.*
[12] *Id.*
[13] *Id.*
[14] *Id.* at 8.
[15] *Id.*
[16] *Id.*
[17] *Id.*

Case No. 1:20-cr-301
Gwin, J.

Officer Lorentz repeatedly identified herself to Sonjamara Terrell upon entry.[18] Receiving no response, Lorentz tapped Sonjamara Terrell on the shoulder.[19] She remained completely unresponsive.[20] After learning that Sonjamara Terrell had taken Oxycodone that morning, Probation Officer Lorentz called emergency medical services ("EMS").[21]

Responding EMS officers used Narcan to revive Sonjamara Terrell.[22] After being revived, she was generally aware of her surroundings and walked from the residence with EMS assistance.[23] EMS took Sonjamara Terrell to Marymount Hospital, roughly 10 minutes away.[24]

Defendant gave Officer Lorentz permission to search, saying that Lorentz could "search whatever [she] want[ed]."[25] Lorentz found no contraband in the residence.[26]

Officer Lorentz then focused on the Silver Mazda CX-7 that Defendant Terrell had been driving.[27] Though ambivalent at first, Defendant told Probation Officer Lorentz that she could search the vehicle.[28]

Before Lorentz searched the vehicle, however, Sonjamara Terrell called her own cellphone from a hospital phone. Sonjamara Terrell had left the cellphone behind at the residence.[29] A relative who had come to the residence answered, and Sonjamara Terrell asked to speak with Probation Officer Lorentz.[30] On the phone, Lorentz told Sonjamara

---

[18] *Id.* at 9.
[19] *Id.*
[20] *Id.*
[21] *Id.*
[22] *Id.*
[23] *Id.* at 9–10.
[24] Supp. Hr'ng Tr. Vol. II, p.17.
[25] Supp. Hr'ng Tr. Vol. II, pp.12, 19.
[26] *Id.* at 16.
[27] *Id.* at 12.
[28] *Id.*
[29] *Id.* at 13.
[30] *Id.*

-3-

Case No. 1:20-cr-301
Gwin, J.

Terrell that she wanted to search the Mazda.[31] Sonjamara Terrell consented and told Lorentz where to find the vehicle's keys.[32]

Probation Officer Lorentz then approached the Mazda.[33] Though the car window, Lorentz saw discharge paperwork from the Cleveland Clinic and credit cards with Defendant's name.[34] Opening the passenger-side door, Officer Lorentz discovered roughly 23 grams of PCP in the car's center console.[35]

A grand jury indicted Defendant on June 11, 2020, for Possession with Intent to Distribute PCP, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C), as well as Simple Possession of PCP, in violation of 21 U.S.C. § 844(a).[36] Defendant now moves to suppress the PCP recovered from the Mazda, arguing that the vehicle search violated the Fourth Amendment.[37] The Government opposes.[38]

## II.    Legal Standard

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."[39] In keeping with that requirement, officers generally must obtain a warrant before searching or seizing a defendant's person or property.[40] Evidence obtained in violation of the Fourth Amendment must be suppressed.[41]

---

[31] *Id.*
[32] *Id.*
[33] *Id.* at 14.
[34] *Id.*
[35] *Id.* at 15.
[36] Doc. 1.
[37] Doc. 16.
[38] Doc. 18.
[39] U.S. Const. amend IV.
[40] *Kentucky v. King*, 563 U.S. 452, 459 (2011).
[41] *Mapp v. Ohio*, 367 U.S. 643, 649–50 (1961).

Case No. 1:20-cr-301
Gwin, J.

But the Fourth Amendment's warrant requirement is not without exceptions.[42] As relevant here, a law enforcement search does not violate the Fourth Amendment when it is performed with the freely given consent of the defendant or someone "who possesses common authority over" the object to be searched or seized.[43] Courts look to the totality of the circumstances to determine whether officers received valid consent to search.[44]

Further, an individual impaired by drugs or alcohol is not categorically barred from giving valid consent to a search or seizure. Whether intoxication rendered an individual incapable of consenting is decided on a case-by-case, totality-of-the-circumstances basis.[45]

### III. Analysis

Considering the totality of the circumstances, the Court finds that Officer Lorentz received valid consent to search the Mazda from both the Defendant and Sonjamara Terrell.

Sonjamara Terrell owned the Mazda, the car was frequently parked at the residence she shared with Defendant, and she had access to the vehicle's keys.[46] Taken together, these facts show that Sonjamara Terrell "possesses[ed] common authority over" the Mazda, giving her authority to consent to Officer Lorentz's vehicle search, which she did.[47]

While Sonjamara Terrell had earlier been incapacitated by Oxycodone, the Court finds that Sonjamara Terrell recovered quickly after EMS officers administered Narcan.[48] Sonjamara Terrell walked out of the house and was aware of her surroundings. Further, she

---

[42] *Id.*
[43] *United States v. Matlock*, 415 U.S. 164, 170 (1974).
[44] *Schneckloth v. Bustamonte*, 412 U.S. 218, 227 (1973).
[45] *United States v. Montgomery*, 621 F.3d 568, 572 (6th Cir. 2010).
[46] Supp. Hr'ng Tr. Vol. I, pp.7, 13; Supp. Hr'ng Tr. Vol. II, p.6.
[47] *Matlock*, 415 U.S. at 170 (holding that consent from defendant's roommate was valid for Fourth Amendment purposes).
[48] Supp. Hr'ng Tr. Vol. I, pp.9–10.

Case No. 1:20-cr-301
Gwin, J.

was sufficiently lucid to call her own cell phone from a hospital phone, ask to speak with Probation Officer Lorentz, and tell Lorentz where to find the Mazda keys.[49]

The totality of the circumstances show that Sonjamara Terrell had the capacity to consent to Lorentz's Mazda search. Sonjamara Terrell gave that consent.

The Defendant himself also consented to the search of the vehicle by telling Officer Lorentz that she could "search whatever [she] wanted."[50] There is no record indication that Defendant objected to the Mazda search. Under the totality of the circumstances, it was objectively reasonable for Lorentz to conclude that Defendant consented to the search.[51]

### IV.    Conclusion

For these reasons, the Court **DENIES** Defendant's motion to suppress the PCP discovered during the Mazda search.

IT IS SO ORDERED

Dated: October 5, 2020                        *s/    James S. Gwin*
                                              JAMES S. GWIN
                                              UNITED STATES DISTRICT JUDGE

---

[49] Supp. Hr'ng Tr. Vol. I, pp.7, 13.
[50] *Id.* at 12, 19.
[51] *Florida v. Jimeno*, 500 U.S. 248, 251 (1991) (holding that an officer does not violate the Fourth Amendment by performing a search within an objectively reasonable interpretation of the scope of defendant's consent).